UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| KATIE TOTH, | ) |
|     Plaintiff, | ) CIVIL COMPLAINT |
| | ) |
| v. | ) |
| | ) Case No. 5:21-cv-882 |
| COMMERCE INVESTMENT GROUP, INC., JOHN DOE CORP. d/b/a "LINRIDGE CONSULTING SERVICES," and MATTHEW ALAN MARCINKO, | ) |
| | ) |
| | ) |
| | ) **JURY DEMAND** |
| | ) |
|     Defendants. | ) |

## COMPLAINT

Now come KATIE TOTH ("Plaintiff"), complaining as to COMMERCE INVESTMENT GROUP, INC. ("CIG"), JOHN DOE CORP. d/b/a "LINRIDGE CONSULTING SERVICES" ("Doe Corp."), and MATTHEW ALAN MARCINKO ("Marcinko," and collectively, "Defendants"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, and the Ohio Consumer Sales Practices Act, R.C. 1345.02 *et seq.*

### JURISDICTION

2. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claims occurred within this District.

**PARTIES**

4. Plaintiff is a natural person residing in Summit County, Ohio.

5. Defendant Commerce Investment Group, Inc. ("CIG") is a California corporation with its principal place of business in California.

6. CIG is a third-party debt collector that, on information and belief, regularly collect upon consumers in Ohio. CIG either goes by the name "Linridge Consulting Services" in its communications with some consumers, including Plaintiff, or it hires an unknown entity doing business as "Linridge Consulting Services" to collect debts, including Plaintiff's, on its behalf.

7. Defendant John Doe Corp. d/b/a "Linridge Consulting Services" ("Doe Corp.") either is CIG operating under a false name or is an unidentified business entity contracted by CIG to collect debts on its behalf in exchange for a portion of collections.

8. Defendant Matthew Alan Marcinko ("Marcinko") is a natural person residing in California. Marcinko is the CEO and, on information and belief, sole owner of CIG. Further, on information and belief, he is the CEO and sole owner of Doe Corp.

9. Marcinko, on information and belief, exercises total control over the collections process at CIG and its contractors, including Doe Corp. if existing. On information and belief, he creates call scripts, sets strategies, and oversees FDCPA compliance for both CIG and its contractors, including Doe Corp.

10. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principles, trustees, sureties, subrogees, representatives, and insurers at all times relevant to the instant action.

[ 2 ]

## BACKGROUND

11. Plaintiff purportedly incurred a debt in connection with her use of a credit card.

12. This credit card account was purportedly closed in 2010, when it purportedly had an outstanding balance of $3,723.19.

13. At some point, whether before or after the closing of the account is unknown, the unidentified original issuer of the credit card was purportedly acquired by HSBC Holdings PLC or a subsidiary thereof (hereinafter "HSBC").

14. Plaintiff has no recollection of ever having a credit card with HSBC, nor does she recall having any credit card that was closed with an outstanding balance and that has not subsequently been settled.

15. Although Plaintiff had significant financial troubles in the early 2000s, she has since made significant efforts to settle her debts incurred during that time period and has been successful in doing so.  She now watches her credit report constantly and does everything she can to resolve outstanding accounts.

16. Assuming that Plaintiff does owe a credit card debt that was purchased by HSBC, that debt would have been incurred for personal purposes, including the purchase of groceries and the payment of bills.  It would not have been used for any business purpose.

17. At some point after acquiring the purported debt and after it went into default, HSBC purportedly sold the account.

18. Eventually, on information and belief through a series of downstream sales, the purported debt ended up in the hands of Defendant CIG.

19. At some point prior to February 2, 2021, Defendant CIG began attempting to collect on the purported debt or retained Doe Corp. to do so on its behalf.

20. On February 2, 2021, Plaintiff received a call that she did not answer, resulting in a voicemail message left on her personal cellular telephone stating:

> Hi, my name is Kevin Davis. I'm a bonded dispatcher, operator number 321, with the county careers office. Our office has been retained to deliver legal documents to your property address on file. This is regarding a pending complaint being ordered in a summons against Katie Toth. If no contact is established today our field agent will be dispatched to your property address. It is important that Katie Toth contact the issuing firm today at 866-382-1313. And the reference to the case number is going to be 686-77. Thank you.

21. Also on February 2, 2021, Plaintiff's sister received a call that she did not answer, resulting in a voicemail message left on her personal cellular telephone stating:

> Hi, my name is Kevin Davis. I'm a bonded dispatcher, operator number 321, with the county careers office. Our office has been retained to deliver legal documents to your property address on file. This is regarding a pending complaint being ordered in a summons against Katie Toth. If no contact is established today our field agent will be dispatched to your property address. It is important that Katie Toth contact the issuing firm today at 866-382-1313. And the reference to the case number is going to be 686-77. Thank you.

22. The messages appear to be identical in content, sound, and length. On information and belief, both voicemails are examples of the same prerecorded message.

23. On information and belief, Plaintiff never consented to be contacted by prerecorded voice message.

[ 4 ]

24. On information and belief, Plaintiff received additional pre-recorded voice calls from the same entity for which she did not retain the voicemails and therefore cannot provide dates or transcriptions.

25. On February 2 or 3, 2021, Plaintiff called 866-382-1313 seeking to discover the purpose of the call and, if appropriate, to resolve the issue. Her call went unanswered, and she left a voicemail message stating that she was attempting to return what sounded like an urgent call.

26. On February 3 or 4, 2021, Plaintiff again called 866-382-1313 seeking to discover the purpose of the call and, if appropriate, to resolve the issue. Her call went unanswered, and she left a voicemail message. In that message, she noted that she had been unable to connect with the recipient despite the supposed urgency of the message left on her phone.

27. On February 4 or 5, 2021, Plaintiff again called 866-382-1313 seeking to discover the purpose of the call and, if appropriate, to resolve the issue. This time the call was answered.

28. On that call, the recipient, who identified herself as "Brenda" but did not provide a business name, informed Plaintiff that the voicemail she had received concerned a credit card debt, that the credit card debt was originally with an unidentified company that had been acquired by HSBC, that the credit card had been closed in 2010, and that the account number for the credit card was **** **** **** 1777, and that the debt totaled $3,723.19.

[ 5 ]

29. On that call, "Brenda" further informed Plaintiff that she was obligated to pay the full balance, but that Plaintiff could settle the balance for less than the full amount by paying a lump sum of $1303.11 or by making installment payments every two weeks for twenty weeks that totalled $2,723.19.

30. On that call, "Brenda" further informed plaintiff that once Katie had decided what course of action she wanted to take, she would receive a contract to e-sign and would have to provide her debit card details.

31. Plaintiff requested additional information about the debt because she did not recall having a credit card that fit the description "Brenda" had given. Among other requests, she asked for an account statement that would show the existence and amount of the debt, and that it was in fact her debt.

32. "Brenda" stated that she would not provide any additional information because they did not possess any additional information.

33. Plaintiff informed Brenda that she would have to think about her decision.

34. "Brenda" stated that, "fortunately" the debt had not been processed to be automatically taken out of Plaintiff's bank accounts yet. Plaintiff asked if she could give an answer on Monday. "Brenda" stated that she would place a hold on the account until Monday.

35. At no point on this call did "Brenda" or anyone else state that they were a debt collector or that the purpose of the call was to collect a debt.

36. On Friday, February 5, 2021, Plaintiff contacted Hilton Parker LLC, and, with Hilton Parker LLC attorney Jonathan Hilton on the line, called 866-382-1313. Plaintiff informed the answering individual that she had retained Hilton Parker LLC for purposes of communicating about the purported debt and that she permitted them to speak to Mr. Hilton about her finances.

37. On this call, "Brenda" reiterated the history of the purported debt and the settlement offers described above. "Brenda" also stated that the name of their business was "LCS," which stood for "Linridge Consulting Services." At Mr. Hilton's request, "Brenda" spelled out "Linridge."

38. On this call, "Brenda" also provided a P.O. Box to which Plaintiff could direct payment if she elected to pay, namely 3681 Sunny Side Dr., # 21127, Riverside, CA 92516, as well as the email from which any contract would be sent for e-signature, namely "tanya@lcsgroupconsulting.com."

39. At no point on this call did "Brenda" or anyone else state that they were a debt collector or that the purpose of the call was to collect a debt.

40. On reference and belief, no business entity with a name containing the word "Linridge" (or, for that matter, the alternate spelling "Lindridge") is registered to do business in either California or Ohio.

41. On reference and belief, no business has registered a fictitious name containing the word "Linridge" (or, for that matter, the alternate spelling "Lindridge") in Orange County, California.

42. On information and belief, "Linridge Consulting Services" is not, nor does it resemble, the true name of the entity that left the February 2, 2021 pre-recorded voicemails on the cellular phones of Plaintiff and her sister.

43. On information and belief, "Linridge Consulting Services" is either a false name employed by Defendant CIG, or is a false name employed by Defendant Doe Corp. when collecting debts on behalf of and under the control of Defendant CIG.

44. Plaintiff has received no written communications from any Defendant. Specifically, Plaintiff has not received, and on information and belief Defendants did not transmit, the notice required by § 1692g(a).

45. This action follows.

### COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

46. Plaintiff realleges the paragraphs above as though fully set forth herein.

47. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) of the FDCPA.

48. Defendants are "debt collector[s]" as defined by § 1692a(6) of the FDCPA because the principal purpose of their businesses is the collection of debts, and because they use the instrumentalities of interstate commerce to do so.

49. In the alternative, Defendants are "debt collector[s]" under § 1692(a)(6) because they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

50. Defendants, violated 15 U.S.C. § 1692 in the following ways:

   a. § 1692e(1) by falsely representing that their agent "Kevin Davis" was "a bonded dispatcher, operator number 321, with the county careers office."

[ 8 ]

b. § 1692e(2)(A) by falsely representing that Plaintiff owed the subject debt or, alternatively, by inflating the amount of Plaintiff's debt, or using usurious and unlawful interest rates in the calculation of Plaintiff's debt, the effect of which was to misstate the character, amount, and legal status of Plaintiff's debt;

c. § 1692e(3) by falsely stating that they had "legal documents" to serve on Plaintiff, thereby falsely implying an upcoming communication from an attorney that did not exist;

d. § 1692e(5) by falsely threatening Plaintiff with legal action on a debt that is out of statute under R.C. 2305.6, as amended effective September 28, 2012, which sets the statute of limitations for written contracts predating its effective date as the earlier of: (1) eight years from the effective date (namely September 28, 2020), or (2) fifteen years from the date of accrual (here sometime in 2025 if Defendants' representations are to be believed);

e. § 1692e(5) by falsely threatening to immediately seize money from Plaintiff's bank accounts to collect an out-of-statute debt for which they had, on reference and belief, not yet filed suit;

f. § 1692e(10) and § 1692e, generally, by employing each of the false representations and deceptive means referenced herein in connection with the collection of the purported debt;

[ 9 ]

    g. § 1692e(11) by failing to disclose in the initial communication that the call was from a debt collector; that the debt collector was attempting to collect a debt; and that any information obtained would be used for that purpose;

    h. § 1692e(11) by failing to disclose in subsequent communication that Plaintiff was speaking to a debt collector;

    i. § 1692e(14) because Defendants used names other CIG's and Doe Corp.'s true business names;

    j. § 1692f(1) by attempting to collect from Plaintiff a debt that she does not owe, or, alternatively, attempting to collect an inflated amount not expressly authorized in Plaintiff's credit agreement or permitted by law;

    k. § 1692f(6) by threatening to seize funds absent a legal means to do so;

    l. § 1692g(a) by failing to send any written notice to the consumer within five days of the initial communication containing the information specified in § 1692g(a)(3)–(5); and

    m. § 1692g(b) by engaging in collection activities and communications during the 30-day dispute period that overshadowed Plaintiff's rights and were inconsistent with Plaintiff's right to dispute the debt, including threatening Plaintiff with immediate seizure of funds.

51. Defendant Doe Corp. d/b/a "Linridge Consulting Services," if a separate entity from Defendant CIG, is directly liable to Plaintiff for the violations listed above.

52. Defendant CIG, if itself employing "Linridge Consulting Services" as a false name, is directly liable to Plaintiff for the violations it committed.

[ 10 ]

53. In the alternative, Defendant CIG is vicariously liable for the actions that Doe Corp. took on its behalf. *See Mullery v. JTM Capital Mgmt., LLC*, No. 18-CV-549V(Sr), 2018 U.S. Dist. LEXIS 204457, at *7 (W.D.N.Y. Nov. 30, 2018) ("Although the FDCPA is silent on the issue of vicarious liability, district courts in this circuit, as well as the majority of courts nationwide have determined that 'entities that meet the FDCPA's definition of "debt collector" may be held vicariously liable for the wrongful collection activity of another carried on for its behalf.'")

54. Defendant Marcinko, as an officer of Defendants CIG and Doe Corp., and as the individual who plans and oversees all aspects of their collections processes, is directly and/or vicariously liable for the above violations. *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008).

### COUNT II – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

55. Plaintiff realleges the above paragraphs as though fully set forth herein.

56. The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(A), prohibits calling persons on their cellular phones using pre-recorded voices without their prior express consent.

57. Defendants violated the TCPA by placing calls to Plaintiff's cellular phone using a pre-recorded voice without Plaintiff's consent.

58. On information and belief, at no time did Plaintiff give prior express consent to be contacted by Defendants using a pre-recorded voice.

59. Defendant's conduct in violating the TCPA was knowingly and willful.

60. Plaintiff is entitled to $500 per call under this count, trebled for knowing or willful violations.

[ 11 ]

**COUNT III – VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT**

61. Plaintiff realleges the paragraphs above as though fully set forth herein.

62. The CSPA, pursuant to R.C. 1345.02(A), states that "[n]o supplier shall commit an unfair or deceptive practice in connection with a consumer transaction."

63. Plaintiff is a "person" as defined by R.C. 1345.01(B).

64. Defendants are "supplier[s]" as defined by R.C. 1345.01(C).

65. Debt collection is part of a "consumer transaction" as defined by R.C. 1345.01(A).

66. R.C. 1345.09(B) thus grants Plaintiff a private right of action against Defendant for $200 per violation of the CSPA, plus noneconomic damages of up to $5,000 per violation in an amount to be determined at trial, plus attorney fees.

67. Defendants committed unfair or deceptive acts or practices in violation of the CSPA, R.C. 1345.02(A), when Defendants engaged in acts and practices in violation of the FDCPA as set forth above.

68. Defendants' actions therefore violated the CSPA, and Plaintiff is entitled to compensation.

WHEREFORE, Plaintiff respectfully requests judgment as follows:

    **a.** Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. § 1692k(a)(2)(A);

    **b.** Awarding Plaintiff actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1692k(a)(1);

[ 12 ]

  **c.**  Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k(a)(3);

  **d.**  Awarding Plaintiff $500 per violation of the TCPA, trebled for willful or knowing violations, as provided under 47 U.S.C. § 227(b)(3)(B);

  **e.**  Awarding Plaintiff statutory, actual, punitive, and treble damages pursuant to the CSPA, plus reasonable attorney fees to include a fee multiplier;

  **f.**  Awarding Plaintiff injunctive relief pursuant to the CSPA forbidding Defendant from continuing its illegal practices against her;

  **g.**  Awarding Plaintiff the costs of this action and any other appropriate relief.

**A TRIAL BY JURY IS DEMANDED.**

Dated:  April 28, 2021

                By:  s/ Geoffrey Parker

                Geoffrey Parker (0096049)
                HILTON PARKER LLC
                7544 Slate Ridge Blvd.
                Reynoldsburg, OH 43068
                Tel: (614) 992-2277
                Fax: (614) 927-5980
                gparker@hiltonparker.com
                *Attorney for Plaintiff*